Frederick Cains FC 8083
Attorney for Roque De La Fuente
430 East 86st Street  NY NY 10028
212 249-9920  Frederickcains@yahoo.com

UNITED STATES DISTRICT COURT

for the

Southern District of New York

----------------------------------------------------------x

| | |
|---|---|
| Roque De La Fuente, an individual | ) |
| Plaintiff, | ) |
| -against- | ) |
| The Sherry Netherland, Inc., a corporation | ) |
| And Michael J. Horwitz, Charlie Rose, | ) |
| Howard Lorber, Mary McGuiness Boies, Ira | ) |
| Lippmann, John Does 1-10, Jane Does 1-10, | ) |
| individuals | ) |

----------------------------------------------------------x

Case No.

Jury Trial Requested

## COMPLAINT FOR A CIVIL CASE

### I.     The Parties to This Complaint

A. Plaintiff. Roque De La Fuente (RDLF), an individual residing at 70 West 45th Street, New York, NY 10036.  Telephone (917) 821-0808.

B.     Defendants, The Sherry Netherland, Inc. (Sherry), a corporation; and  its Directors Michael J. Horwitz, Howard Lorber, Charlie Rose, Mary McGuiness Boies, Ira Lippman,, all individuals, and John Does 1-10 and Jane Does 1-10 (collectively the Directors), whose names are unknown to Plaintiff.  All individual Defendants are upon information and belief Directors and/or Officers of the Sherry and are named in that capacity. All Defendants reside at 781 Fifth Avenue, New York, New York 10022.  Telephone 212 355-2800.

### II     Basis for Jurisdiction

In addition the amount in controversy exceeding $75,000, this is a federal question case arising under 28 U.S.C. § 1331 involving the following statutory authorities which prohibit

discrimination on the basis of race or ethnicity for the purchasing of residential housing by members of a "protected class" including Mexican-Americans of which the Plaintiff is a member.

(a) 42 USC § 1982. Refusal to sell property to willing buyer solely on the basis of race or national origin. "*All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.*" 42 USC § 1982

(b) 42 U.S.C. § 2000a *et seq.* Claim injunctive relief for discrimination on the basis of national origin in a hotel, a public accommodation, selling lodging over the internet to transients from throughout the U. S. and the world

(c) 42 USC § 3601**.** It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States.

(d) 42 U.S.C. § 3613(c)(1). Compensatory and actual damages for violation of rights under § 1982 or the Fair Housing Act. There is no limit for punitive damages.

(e) 42 USC 3604(a). To refuse to sell or rent after the making of a *bona fide* offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(f) Mexican-Americans, such as RDLF, are members of a **protected class** as determined by federal courts in the following reported cases:

> "Tino Villanueva has made out a prima facie case.[3] He is a member of a protected class—indeed, several (his complaint describes him as a "brown-skinned male of Mexican–American ancestry", age forty-four...)."
>
> Villanueva v. Wellesley College, 930 F.2d 124, 129 (1 Cir.,1991)
>
> "[As a Hispanic Mexican-American, **he is a member of a protected class**…" [Emphasis added.]
>
> E.E.O.C. v. Sears Roebuck and Co., 243 F.3d 846, 851 (4 Cir.2001)
>
> "Rodriquez **is in a protected class because she is of Mexican origin**…" [Emphasis added.]
>
> Rodriquez v. Wal-Mart Stores, Inc., 540 Fed.Appx. 322, 326 (5 Cir.2013)

2

As a Mexican the plaintiff "*…belongs to a protected class*."

Cordova v. State Farm Ins. Companies, 124 F.3d 1145, 1148 (9 Cir.,1997)

"Each of the four plaintiffs is of Hispanic origin and a member of a protected class." Nescolarde v. Satispie, LLC, 149 F.Supp.3d 397, 406 (W.D.N.Y., 2016)

"It is undisputed that plaintiff was within a **protected class** (Hispanic)." [Emphasis added.]

Lopez v. 845 WEA Management Inc., 2012 WL 661687, at *5 (S.D.N.Y.,2012)

'Discrimination based on Hispanic origin constitutes racial discrimination under  Title VII."

Village of Freeport v. Barrella, 814 F.3d 594, 607 (2 Cir.(N.Y.),2016)

"Plaintiff may establish a prima facie case of this discrimination by showing "(1) that they are members of a protected class; (2) that they sought and were qualified to rent or purchase the housing; (3) that they were rejected; and (4) that the housing opportunity remained available to other renters or purchasers." *Mitchell v. Shane,* 350 F.3d 39, 47 (2d Cir.2003) (citing *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1038 (2d Cir.1979)."

Fair Housing Justice Center, Inc. v. Edgewater Park Owners Co-op., Inc., 2012 WL 762323, at *7 (S.D.N.Y.,2012)

"Discriminatory intent can be deduced from the "totality of the circumstances," and courts should consider such factors **as the discriminatory impact of the policy**, the historical background of the policy, the event which led up to the challenge of the policy, departures from normal procedures, and departures from normal substantive criteria." [Emphasis added.]

Fair Housing Justice Center. Inc. at *7

"A prima facie case is established by showing that: (a) the plaintiff belongs to a class protected by the statute, (b) the plaintiff sought and was qualified for the dwelling, (c) the plaintiff was denied the opportunity to rent the dwelling, and (d) the dwelling remained available. "

Cabrera v. Jakabovitz, 24 F.3d 372, 381 (2d Cir.1994)."

3

"The proof shows that the Broomes are members of a protected class, they were qualified to sublease apartment 7A, their sublease application was denied, and the apartment remained available thereafter. (Tr. at 438, 790–91, 1068). Nothing more need be shown to establish a prima facie case. See Soules v. 10
United States Dept. of Hous. & Urban Dev., 967 F.2d 817, 822 (2d Cir.1992). Therefore, the court finds that the Broomes did show an inference of housing discrimination." [Emphasis added.]

Broome v. Biondi, 17 F.Supp.2d 211, 217 (S.D.N.Y.,1997)

"A white person, just as a nonwhite, may state a claim under § 1981, which "proscribe[s] discrimination **in the making or enforcement of contracts, against, or in favor of, any race.**" McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 295 (1976); see also Stewart v. New York Univ., 430 F.Supp. 1305, 1315 (S.D.N.Y.1976)." [Emphasis added.]

O'Connor v. 11 West 30th Street Rest. Corp., 1995 WL 354904, at *5 (S.D.N.Y.,1995)

"Race cannot be any part of the reason why a tenant is denied housing."

Bush v. Kaim, 297 F.Supp. 151, 162 (N.D.Ohio 1969) **(**

(g)     New York State and New York City statutes and case law precedents prohibit racial and ethnic discrimination in housing and places of public accommodation.

N. Y. C. Administrative Code § 8-107 4. Public accommodations. a. It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of the actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof,

New York Executive Law § 296 5(a)(2). To discriminate against any person because of race, creed, color, national origin, sexual orientation, military status, sex, age, disability, marital status, or familial status in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith.

4

<u>New York Civil Rights Law</u> § 19–a. No corporation formed for the purpose of the cooperative ownership of real estate within the state shall withhold its consent to the sale or proposed sale of certificates of stock or other evidence of ownership of an interest in such corporation because of the race, creed, national origin, or sex of the purchaser.

2. For the purposes of this section a "corporation" shall include the cooperative management, cooperative tenants, cooperative shareholders, or any appointee or successor in interest of a corporation.

(h) This Court has mandatory supplemental jurisdiction over state law claims when a claim based on federal law is stated in a complaint. 28 USC § 1367   Plaintiff invokes the following New York case law in which anti-discrimination statutes in the purchase of housing in cooperative housing corporations such as the Sherry have been upheld:

> "While certain restrictions on the transfer of Co-op proprietary leases and stock are considered reasonable restraints on alienation and are therefore legal, as discussed above, <u>others are completely unjustifiable and invalid</u>**.** (See Gen.Obligl.Law § 5–331, Bachman v. State Div. of Human Rights, 104 A.D.2d 111, 481 N.Y.S.2d 858)." [Emphasis added]
>
> <u>Chemical Bank v. 635 Park Ave. Corp</u>., 155 Misc.2d 433, 436–37 (N.Y.Sup.,1992)
>
> "Some of these questions are: (1) is FAC a cooperative commercial corporation or a cooperative housing corporation?; (2) is the Board of FAC acting in good faith?; (3) is good faith required?; and, (4) if FAC is found to be a cooperative commercial corporation, **<u>is it then so far removed from the concept of a cooperative housing corporation that restrictions on the transfer of stock may be invalid?</u>**" [Emphasis added.]
>
> <u>Vinnik v. 795 Fifth Ave. Corp</u>., 295 A.D.2d 339, (1 Dept.,1983) affirmed Vinnik v. 795 Fifth Ave. Corp., 62 N.Y.2d 698, 699 (1984)
>
> "Notwithstanding the stated private residential purpose, from the time FAC made the purchase the Pierre has been operated just like any other first-class hotel, which seeks to solicit as much public business as possible in order to maximize profits.
>
> <u>Vinnik</u> at 685.
>
> "…the stockholders in FAC have a dual objective of providing residences and

5

profitably running a public hotel."

Vinnik at 686.

"Accordingly, any restraint on alienation must be scrutinized carefully to insure that it does not offend public policy concerning the nature of cooperative ownership."

Chemical Bank v. 635 Park Ave. Corp., 155 Misc.2d 433, 435 (1992)

**"A cooperative board can be challenged for refusing to approve a prospective purchaser, if such decision is based on prohibited racial, \*632 ethnic or religious discrimination.** (Civil Rights Law § 19–a; *Weisner v. 791 Park Ave. Corp.,* 6 N.Y.2d 426, 190 N.Y.S.2d 70, 160 N.E.2d 720). While the defendant has denied the allegations of discrimination, **the allegations of the plaintiff are sufficient to set forth a valid cause of action.** In addition, the court notes that although the recent case of *Matter of Levandusky v. One Fifth Ave. Apt. Corp.,* 75 N.Y.2d 530, 554 N.Y.S.2d 807, 553 N.E.2d 1317 [1990] does, in fact, mandate the use of the "business judgment rule", when reviewing cooperative board decisions, the case also clearly states that **the "business judgment rule" does not prohibit judicial inquiry into actions of the board where they have been allegedly taken in bad faith** and for self dealing." [Emphasis added.]

Faiola v. Jac Towers Apartments, Inc., 147 Misc.2d 630, 631–32 (N.Y.Sup.,1990)

(i)     Plaintiff is entitled to a jury trial.

The U. S. Supreme Court determined in *Stern v. Marshall,* 131 S.Ct. 2594, 2605 (2011) that a litigant is entitled to a jury trial before an Article III Court when a non-core matter, **such as ethnic and racial discrimination,** invoking federal laws, is present, regardless of the fact that the issue arose in a bankruptcy case

"It is apparent that the plaintiffs' claims against the Lake Street defendants cannot be resolved on summary judgment. The plaintiffs have stated the elements of a prima facie case of housing discrimination and the defendants have articulated nondiscriminatory reasons for their actions. **The \*1190 question of pretext, however, is one that must be decided by a jury.**"  [Emphasis added.]

Sassower v. Field, 752 F. Supp. 1182, 1189–90 (S.D.N.Y. 1990)

## III. Statement of Claim

### Preliminary Statement

1. The gravamen of this case is racial and ethnic discrimination against Plaintiff RDLF, an individual Mexican-American, a "protected class" under applicable federal law, of considerable wealth and accomplishment, by a cooperative commercial housing corporation which holds itself out as the finest white-glove, full-service residence in Manhattan with twice daily maid service and other amenities for all residents.

2. Defendant Directors, who determine Defendant Sherry's policies of disapproving would be assignees of its proprietary leases and transferees of its shares of stock, are a "Who's Who" of the professional, business and social elite of New York City.

3. Contrary to said Directors' public pronouncements of their belief in equality of opportunity for all, they strive to exclude all but members of the white race from living among them as apartment owners in the Sherry.

4. Said Directors claim the right to exclude anyone from purchasing an apartment in the Sherry without being required to state a reason.

5. Plaintiff's cause of action is grounded in his assertion that the public policy of the United States, as enunciated in its statutes, and the public policies of New York state and New York City, as enunciated in their statutes and regulations do not permit Defendants to bar Plaintiff from purchasing an apartment solely because he is Mexican-American, as they have.

### Relevant Factual Background

6. RDLF was born in San Diego, California to parents whose father was born in Tuxpam, Veracruz, Mexico and mother in Monterrey, Nuevo Leon, Mexico. Annexed Declaration of RDLF, ¶ 2.

7. RDLF and 5 irrevocable trusts (RDLFT) that were set up for the benefit of RDLF's 5 children, own businesses in 10 states of the United States, and in 4 other countries. Annexed Declaration of RDLF, ¶ 3.

8. RDLF avers that he has a net worth in 8 figures. Annexed Declaration of RDLF, ¶ 4.

9. RDLF avers that he was prepared to purchase the subject apartment for $1,275,000 in cash and that he has a sufficient income, many times over, to pay the monthly maintenance

thereafter. Annexed Declaration of RDLF, ¶ 5.

10. RDLF avers that he has never been convicted of a crime and has never been fined by a government agency or court for any of his business dealings or personal conduct. Annexed Declaration of RDLF, ¶ 6.

11. RDLF avers he has never filed for bankruptcy. Annexed Declaration of RDLF, ¶ 7.

12. RDLF avers that RDLF and RDLFT owns and has owned real estate holdings in New York for over 20 years and are current as to all taxes related to these holdings. RDLF, ¶ 8.

## Relevant Procedural Background

13. When RDLF sought to bid for the apartment in the underlying Chapter 7 case. 05.:10338 (SCC), under 11 USC § 363(b)(1), Judge Chapman by accepting a high bid from RDLF found that RDLF was an objectively qualified buyer.

14. Notwithstanding same the Debtor's lessor, the Sherry alleged that it had the right under its proprietary lease with the Debtor to reject RDLF as a purchaser without the need to express a reason for rejecting him..

15. RDLF alleges that the sole reason for his rejection is that he is a Mexican-American. RDLF Declaration, ¶ 9.

14. RDLF previously sought similar relief as being sought herein in a district court in the SDNY by attempting to remove a contested matter from a bankruptcy court in the SDNY. Thereafter Judge Chapman stated on the record that RDLF was free to seek relief against Defendant Sherry in another court. Transcript of May 11, 2017 hearing, Case No. 05-10338-scc, ECF452-1, annexed hereto as Exhibit "2." See p. 19, lines 13-14; p. 23, lines 21-24; and, p. 60, lines 21-22.

15. After filing a withdrawal of reference in the District Court, Judge Schofield dismissed the case ruling that RDLF could only seek relief by adversary proceeding or plenary action. A copy of that Decision in Case No. 17 Civ. 3102(LGS) is annexed hereto as Exhibit "3."

16. J. Chapman made it clear that RDLF could **not** seek relief by adversary proceeding in her Court Exhibit "2," p. 23, Lines 21-24, p. 60, (*It's got nothing to do with me*.") lines 21-22 stating "*it's none of our business*." This plenary action is the result.

17. Earlier in the case, on December 20, 2016 RDLF was present in-person, *pro se*, during a § 363(b) hearing for the Court to determine whether an offer received by the Trustee for the purchase of Debtor's apartment was fair and reasonable.

17. The hearing was short-noticed by the Chapter 7 Trustee in the said case. ECF-401.

The purpose of the hearing was for the Court to determine whether the motion under FRBP 6004 and 11 USC § 363(b)(1) to evaluate if an offer from a third party, the initial bidder, of a $1,100,000 cash payment to purchase Apartment 1211 in a cooperative commercial building located at 781 Fifth Avenue, New York, New York 10021, that was owned by the estate of the Debtor, was a fair and reasonable offer pursuant to 11 USC § 363(b)(1).

19. Notices of the motion were given by the Trustee to all parties-in-interest including the Debtor, as required by law. The Debtor filed an objection informing the Court that she had found a buyer who would make a higher or better offer at the hearing on December 20th.

20. The Debtor invited Plaintiff RDLF to bid for the apartment owned by her estate.

21. After RDLF agreed to bid the Debtor filed an objection to the proposed sale and informed the Court that a third party would attend the hearing and bid. ECF-407.

22. Plaintiff RDLF attended the hearing and participated *pro se*.

23. RDLF made a *bona fide* offer of a $1,195,000 cash payment to purchase.

24. The Trustee prepared and an agent authorized by RDLF signed a bid contract that is annexed to the accompanying declaration of RDLF as its Exhibit "1."

25. RDLF was required to and did timely wire a $100,000 deposit to the Trustee under a term of said contract.

26. A few days later, after the initial bidder overbid RDLF, RDLF increased his bid to $1,275,000 which was recommended by the Trustee and accepted by the Court as the high bid.

27. The Sherry, by its attorneys attending the hearing on December 20th, insisted that no sale could be concluded by the estate to RDLF without its approval of RDLF who the Sherry demanded timely submit financial and other information about himself, known as a "Board Package" to the Trustee for forwarding to the Sherry.

28. RDLF also had to agree to make himself available for a personal interview with the Board of Directors of the Sherry.

29. It is undisputed that RDLF timely submitted a complete Board Package and was available for the said interview.

30. The Board of the Sherry after receiving the Board Package, and without inviting RDLF to a personal interview, summarily, on or before the morning of January 13, 2017, and before the entry of a Sale Order in the afternoon of January 13th, informed the Trustee that RDLF was unacceptable to them.

31. No reason was given to the Trustee by the Sherry for their rejection of RDLF.

32. The initial bidder refused to submit a complete Board Package, withdrew and was refunded his deposit.

33. Immediately thereafter the Trustee put the apartment back on the market with an asking price of $1,100,000.

## Cause of Action

34. Plaintiff repeats and re-alleges the contents of §§ I, II, III and ¶¶ 1-33 herein that are relevant to this cause of action as if set forth in full.

35. RDLF alleges that the sole reason why he was rejected by the Sherry was because of his Hispanic race and ethnicity as a Mexican American. Annexed Declaration of RDLF, ¶ 9.

36. Upon information and belief, the Sherry and its Directors have a "whites only" policy and do not generally permit its cooperative apartments to be purchased by Hispanics, African and Asian Americans. Annexed Declaration of RDLF, ¶ 10.

37. The Sherry is a place of public accommodation where anyone can rent a hotel room. Annexed Declaration of RDLF, ¶11.

38. The Sherry engages in interstate commerce as its hotel rooms are offered for rent on internet web sites offering hotel rooms to consumers throughout the U. S. Annexed Declaration of RDLF, ¶ 12.

39. Hotel guests use the same doormen, reception desk, porters, lobby and its seating areas, elevators, corridors and restaurant as the owners of cooperative apartments. Annexed Declaration of RDLF, ¶ 13.

40. The restaurant in the Sherry, Cipriani, is open to the public which is required to pay prices listed on its menu. Owners of cooperative apartments in the Sherry receive a 20% discount. Annexed Declaration of RDLF, ¶ 14.

41. The Sherry has a for-profit social club, Doubles, on its premises which is available only to owners of its cooperative apartments and those invited to join as "Members." Annexed Declaration of RDLF, ¶ 15.

42. Upon information and belief, Doubles is not customarily accessible to Hispanics, African and Asian Americans and also has a "whites only" policy. Annexed Declaration of RDLF, ¶ 16.

43. Defendant Sherry is a for-profit public accommodation engaged in interstate

10

commerce. Annexed Declaration of RDLF, ¶ 17.

44. The effect of his rejection by the Sherry has been devastating to RDLF, who registered with the New York City Campaign Finance Board in April 2017 as a candidate for Mayor of New York City in the 2017 election. Annexed Declaration of RDLF, ¶ 18.

45. The lack of a residence in New York City prevented RDLF from registering with the New York City Board of Election and the Campaign Board in January 2017 and beginning his campaign immediately thereby causing him to miss out on 2 debates.

46. The degradation of being rejected on racial and ethnic grounds has manifested itself in physical ailments such as sleeplessness and headaches and consequential depression because of the intentional infliction of emotional distress upon RDLF by Defendants the Sherry and its Directors solely because of RDLF's race and ethnicity as a Mexican-American. Annexed Declaration of RDLF, ¶ 18.

47. Upon information and belief, the Sherry owns assets with a market value of approximately $2 billion consisting primarily of a 28 story hotel and apartment building with retail stores, restaurant, and a social club all located at 781 Fifth Avenue in Manhattan. Annexed Declaration of RDLF ¶ 19.

48. Defendant Sherry is *sui generis* among other cooperative housing corporations in New York City which operate as not-for-profit entities. Annexed Declaration of RDLF ¶ 20.

## IV Relief

RDLF, as compensation for the racial and ethnic discrimination against him by the Sherry and its Board of Directors, individually, and the damages this has caused him, seeks compensatory damages of $10 million plus exemplary damages in an amount to be determined at trial and punitive damages of 10% of the value of the Sherry. RDLF demands such other and further relief, including general relief, as this Court deems just.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so

identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

New York, New York
June 20, 2017

                                              /s
                                              Frederick Cains
                                              Attorney for Roque De La Fuente
                                              430 East 86th Street
                                              New York, NY 10028
                                              (212) 249-9920
                                              Frederickcains@yahoo.com

## Table of Exhibits

Exhibit "1"      Bid contract signed by Trustee and David Wick, agent for RDLF

Exhibit "2."     Relevant excerpt of transcript of May 11, 2017 before Judge Chapman.

Exhibit "3."     Copy of the Decision/Order of Judge Schofield